**Norman Rowe McCONNEY, Appellant,**

v.

**William P. ROGERS, Attorney General of the United States, and John P. Boyd, District Director, Immigration and Naturalization Service, Appellees.**

**No. 16906.**

United States Court of Appeals
Ninth Circuit.

March 10, 1961.

Philip L. Burton, John Caughlan, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., James F. McAteer, Asst. U. S. Atty., Seattle, Wash., for appellees.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

Norman Rowe McConney brought this suit to obtain a declaration of his status as a citizen, set aside an order of deportation, and obtain related injunctive relief.[1] He later moved for leave to dismiss without prejudice his first claim in which a declaration of citizenship was sought. This motion was denied. After a stipulated submission for disposition by summary judgment on the administrative record, the entire action was dismissed with prejudice.

McConney appeals, questioning the fairness of his hearing before the Immigration and Naturalization Service, the sufficiency of the evidence to support the administrative finding that he was an alien, and the denial of his motion to dismiss his claim for a declaratory judgment.

McConney was born in Panama or the Panama Canal Zone in December of 1911. His natural mother was Eva Sarewez

[1] In bringing this suit McConney invoked section 360(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503(a); the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202; section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009; and the Habeas Corpus Act, 28 U.S.C.A. § 2241 et seq.

or Suarez, also known as Eva De Silva. His natural father was Lionel Rowe. Appellant was raised as an infant by his aunt, Estelle McConney. She brought him with her to the United States in 1917 or 1918, where they joined her husband, his uncle, Clarence McConney, who is now in a mental hospital. Appellant was admitted to this country as an alien, it being noted on his certificate of admission that he was a citizen of Panama.

Appellant claims that he was adopted by his aunt and uncle in Panama prior to coming to the United States. He has not been naturalizd as a citizen of the United States.

On February 6, 1956, McConney was convicted of selling narcotic drugs in violation of 21 U.S.C.A. § 174. This is an offense making aliens subject to deportation under section 241(a) 11 of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C.A. § 1251(a) (11). Deportation proceedings were commenced against him in Los Angeles on February 27, 1956. Before a hearing could be held, McConney was transferred to McNeil Island Penitentiary in the state of Washington for incarceration under the judgment and sentence entered in the narcotics case.

The deportation matter came on for hearing at McNeil Island Penitentiary on April 11, 1956, before a special inquiry officer of the Immigration and Naturalization Service. The hearing was recessed several times to afford McConney an opportunity to arrange for representation by counsel, and when this failed, to arrange for the presence of the Catholic chaplain. When the hearing finally got under way the question arose as to whether McConney's natural mother and father were citizens of the United States. McConney testified that he did not know, but volunteered the information that his mother was then in New York.

The examining officer then suggested that the hearing be adjourned so that the deposition of appellant's mother could be taken. The hearing was accordingly continued for one month, the special in-

quiry officer stating that this was "for the purpose of affording the government an opportunity to take a deposition" from Eva De Silva.

The hearing resumed at McNeil Island Penitentiary on October 24, 1956. McConney again stated that he would like to have the Catholic chaplain present but reported that the chaplain was ill. The special inquiry officer nevertheless determined to proceed with the hearing. The examining officer then introduced in evidence two hand-written documents, each of which was captioned "Record of Sworn Statement."

One, dated September 11, 1956, recorded certain questions propounded to Eva De Silva in New York City on that date by an investigator of the Immigration and Naturalization Service, and her answers thereto. The other, dated September 26, 1956, was in similar form and was taken in New York City on the latter date by a different investigator. In each statement it was recited that before answering the questions, Eva De Silva had been placed under oath administered by the investigator. Each was also sworn to and signed by Eva De Silva, was acknowledged by the investigator, and was signed by an additional witness. Upon inquiry by the special inquiry officer, McConney stated that he had no objection to the admission in evidence of these statements.

In one of these statements Eva De Silva stated in answer to a direct question that she was a citizen of Panama. She was not asked about the citizenship of appellant's natural father but was asked where the father was born. She answered,"I think he was born in Panama." In the other statement Eva De Silva was not asked about her own citizenship or that of appellant's father or where she or the father was born, and she gave no information as to these matters.

Several other exhibits were received, but McConney was the only witness to testify in person at the hearing. In the decision and order of the special inquiry officer entered on October 29, 1956, it was found and determined that McConney

was an alien and was deportable because of his conviction for violating the narcotics laws. In connection with the finding that appellant was an alien, the special inquiry officer also found that neither of his natural parents was a citizen of the United States. It is recited in the decision and order that "the mother furnished the information * * * concerning * * * the citizenship of herself and the putative father." McConney was ordered deported. His appeal from that order to the Board of Immigration Appeals was thereafter dismissed.

The order of deportation could not be immediately executed because McConney had not completed his term in the penitentiary. He was released from that institution and into the custody of the District Director of the Immigration and Naturalization Service on August 5, 1959. On that same day he filed the complaint in the instant proceeding.

We turn first to appellant's contention that he was not accorded a fair administrative hearing and that the district court erred in holding otherwise. This contention is based on several grounds, one having to do with the reception in evidence of the De Silva depositions. Appellant argues that the failure of agency officials to notify him of the time and place of the taking of these depositions and the failure to give him an opportunity to submit interrogatories to the deponent violated pertinent statutes and administrative regulations and the due process clause of the fifth amendment.

It is provided in section 242(b) of the Immigration and Nationality Act, as amended, 8 U.S.C.A. § 1252(b), that proceedings to determine the deportability of aliens before a special inquiry officer shall be in accordance with regulations not inconsistent with the statute, prescribed by the Attorney General. This subsection further provides that such regulations shall include requirements that—

"(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

"(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel authorized to practice in such proceedings, as he shall choose;

"(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

"(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."

Section 242(b) also provides that the procedure prescribed by such regulations "shall be the sole and exclusive procedure for determining the deportability of an alien under this section."

Consistent with the provisions of the above-quoted clauses (2) and (3) of section 242(b), the regulations prescribed by the Attorney General include 8 C.F.R. § 242.16(a), quoted in the margin.[2] At the deportation hearing the special inquiry officer fully complied with this regulation by advising McConney of his rights as specified in section 242(b) (2) and (3) of the act, and in the indicated regulation.

2. 8 C.F.R. § 242.16(a) reads:
"(a) *Opening.* The special inquiry officer shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings and require him to state then and there whether he desires representation; advise the respondent that he will have a reasonable opportunity to ex- amine and object to the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; place the respondent under oath; read the factual allegations and the charges in the order to show cause to the respondent and explain them in nontechnical language, and enter the order to show cause as an exhibit in the record."

But while McConney was carefully advised as to his rights under the statute, the facts concerning the taking of the De Silva depositions indicate that he was not accorded those rights. With regard to those depositions he was not accorded a reasonable opportunity to examine the evidence against him nor to cross-examine Eva De Silva, the witness thus presented by the Government. He was deprived of this opportunity because he was not advised of the time and place of the taking of the depositions so that he might, if he desired and was able to, arrange for representation at the taking of those depositions. He was further deprived of that opportunity because he was not given the opportunity to present written interrogatories to be propounded to Eva De Silva when the depositions were taken.[3]

Appellee points to another regulation as authorizing the reception in evidence of these documents notwithstanding the fact that McConney was not permitted to participate in the questioning recorded therein. This is 8 C.F.R. § 242.14(c), which reads as follows:

"(c) *Use of prior statements.* The special inquiry officer may receive in evidences any oral or written statement which is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial."

In our view this regulation was not intended to authorize the reception of evidence obtained and introduced under circumstances constituting a denial of the rights accorded aliens under the quoted statute.

There can be no doubt that the information conveyed in these sworn statements related to a substantial issue in the case, was adverse to appellant, and was relied upon by the special inquiry officer. The only real issue of fact was whether McConney was an alien. He was born in Panama, or possibly the Panama Canal Zone, and was not a naturalized citizen of this country. But under section 303 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1403, he might nevertheless be a citizen of the United States if one of his natural parents was an American citizen.[4]

McConney testified that he did not know whether either of his parents was a citizen of the United States. The first Eva De Silva deposition contained the information that she was a citizen of Panama, thus partially resolving this issue of fact if the fact-finder chose to believe her statement. The special inquiry officer did choose to believe her statement. He found that neither parent was a citizen of the United States and stated that this information was furnished by the mother.[5]

In sustaining the order of deportation the district court stated that the De Silva depositions disclosed nothing not already disclosed by plaintiff's own admission of his understanding of his origin. If by "admission" the court meant the content of certain alien registration documents

3. Since McConney was not represented at the hearing, the fact that he stated that he did not object to the introduction of the depositions should be disregarded.

4. Section 303 of the 1952 act reads as follows:
"(a) Any person born in the Canal Zone on or after February 26, 1904, and whether before or after the effective date of this chapter, whose father or mother or both at the time of the birth of such person was or is a citizen of the United States, is declared to be a citizen of the United States.
"(b) Any person born in the Republic of Panama on or after February 26, 1904, and whether before or after the effective date of this chapter, whose father or mother or both at the time of the birth of such person was or is a citizen of the United States employed by the Government of the United States or by the Panama Railroad Company, or its successor in title, is declared to be a citizen of the United States."

5. As indicated above, the special inquiry officer was partially in error in this regard since the Eva De Silva depositions did not deal with the citizenship of the natural father.

introduced in evidence, this may be true. It is not true if the court was referring to McConney's testimony at the hearing, since he there stated that he did not know whether his parents were citizens of the United States. In any event, the special inquiry officer relied upon the Eva De Silva depositions to provide what he regarded as an essential fact bearing upon the question of citizenship. Such a finding cannot be sustained by speculating as to the sufficiency of the alien registration documents to establish the same fact for it is not known that the special inquiry officer would have found this other evidence sufficient.

The district court and appellee rely upon Hyun v. Landon, 9 Cir., 219 F.2d 404, as authority for holding that there was no essential unfairness in connection with the receiving of the depositions.[6] It was there held that administrative tribunals are not bound by the strict rules of evidence which apply in judicial proceedings. Hence, it was held, an alien's financial inability to insure attendance of himself, his attorney, or both at the place of taking depositions is not a denial of due process.

In Hyun, however, the deportee's attorney was given timely notice of the time and place the depositions would be taken. The attorney was further advised that the deportee could be present, could submit written interrogatories, could present witnesses at the same time and place, or could be represented by counsel. The deportee was not present or represented, nor did he submit direct interrogatories. He in fact disclaimed any desire to present cross-interrogatories. It was under these circumstances, totally different from those which here exist, that reception of the depositions was upheld.

But apart from this distinction between Hyun and the instant case, it is to be observed that the decision in Hyun is predicated on general principles of due process without regard to procedural statutes or regulations. Here we have concluded that there was a violation of procedural statutes and regulations resulting in substantial prejudice, and we thus predicate our view that appellant has been deprived of a fair hearing and due process of law. Accordingly we are not called upon to decide whether, absent those statutes and regulations, the reception in evidence of the De Silva depositions would have denied McConney due process.

The reception in evidence of these depositions makes it necessary to reverse the judgment of the district court and set aside as void the order of deportation. It is therefore unnecessary to decide whether the administrative hearing was also unfair in the other respects urged by appellant.[7]

In our view appellant's motion for the dismissal without prejudice of his claim for declaratory relief, made prior to the district court trial, should have been granted. It was therefore error in the final judgment to dismiss that claim with prejudice. We express no view as to the

6. While the district court declined to set aside the deportation order because of the reception of the Eva De Silva depositions, its misgivings with regard to what was done were expressed in its memorandum opinion in these words:

"Plaintiff does have the right to cross examine such witnesses, however, and it would be a better practice for the Service to advise those aliens against whom deportation proceedings are pending of their right to be represented at the taking of depositions or their right to submit interrogatories. The failure to so advise in the instant case, however, was not prejudicial for the reason above."

7. Appellant argues that the administrative hearing was also unfair because: (1) the hearing was conducted more than a thousand miles away from appellant's place of residence, where the deportation proceeding was commenced; (2) the hearing was conducted in a penitentiary under circumstances which allegedly deprived him of a reasonable opportunity to obtain evidence to refute the charge of alienage; and (3) appellant needed a lawyer to represent him at the hearing but was without funds to employ counsel to come to the penitentiary.

merits of that claim or whether it may be renewed at a later time.

The judgment is reversed with directions to set aside the order of deportation, release appellant from custody, and dismiss without prejudice appellant's claim for declaratory relief.