Filed:  April 1, 2009

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-4793
(3:06-cr-00484-REP)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RAY ALEXANDER THOMPSON-RIVIERE,

Defendant - Appellant.

O R D E R

The court amends its opinion filed March 26, 2009, as follows:

On page 5, section II, second paragraph, line 4, the word "illegally" is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAY ALEXANDER THOMPSON-
RIVIERE,

*Defendant-Appellant.*

No. 07-4793

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:06-cr-00484-REP)

Argued: December 5, 2008

Decided: March 26, 2009

Before NIEMEYER, SHEDD, and DUNCAN,
Circuit Judges.

Vacated and remanded by published opinion. Judge Shedd
wrote the opinion, in which Judge Niemeyer and Judge Dun-
can joined.

## COUNSEL

**ARGUED:** Mary Elizabeth Maguire, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Richmond, Virginia, for

Appellant. Stephen Wiley Miller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia; N. G. Metcalf, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

**OPINION**

SHEDD, Circuit Judge:

Ray Alexander Thompson-Riviere, who was born in the Panama Canal Zone, pled guilty to one count charging him with violating 8 U.S.C. § 1326(b)(4). That statute makes it a criminal offense for an alien who has previously been removed from the United States to reenter the country without the approval of the Attorney General. Before sentencing, Thompson-Riviere moved to withdraw his guilty plea, primarily contending that newly obtained DNA evidence indicates that he may be the biological son of a United States citizen and, if so, he is also a United States citizen—rather than an alien—by virtue of 8 U.S.C. § 1403(a). That statute creates a right of derivative United States citizenship for certain persons born in the Canal Zone. Finding that Thompson-Riviere failed to meet his burden of proof under § 1403(a), the district court denied the motion and eventually sentenced him to an 87-month term of imprisonment. Thompson-Riviere now appeals the denial of his plea withdrawal motion. For the reasons set forth below, we hold that the district court abused its discretion in denying the motion. Accordingly, we vacate the judgment and remand this case with instructions to the district court to allow him to withdraw his plea.

I

A guilty plea is "a grave and solemn act," *Brady v. United States*, 397 U.S. 742, 748 (1970), and "is an event of signal

significance in a criminal proceeding," *Florida v. Nixon*, 543 U.S. 175, 187 (2004). It "is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Guilty pleas "are indispensable in the operation of the modern criminal justice system," and the finality of such pleas is a matter of "particular importance." *United States v. Dominguez Benitez*, 542 U.S. 74, 82-83 (2004).

Consequently, a defendant awaiting sentencing does not have an absolute right to withdraw a guilty plea. *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003). Rather, Federal Rule of Criminal Procedure 11(d)(2)(B) authorizes the withdrawal of a guilty plea before sentencing only if "the defendant can show a fair and just reason for requesting the withdrawal." Because of "the grim dynamics of plea bargaining, including the prevalence of 'buyer's remorse' among those who have pled," *United States v. Torres-Rosario*, 447 F.3d 61, 66 (1st Cir. 2006), a district court should not interpret Rule 11(d)(2)(B) "to allow a defendant to withdraw a guilty plea 'simply on a lark' after [it] conducts a thorough plea colloquy and has made the requisite findings," *United States v. Battle*, 499 F.3d 315, 321 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 1121 (2008). As we have explained:

> The orderly procedure in our busy trial courts would be disrupted if a fair and just reason were found to lodge in all cases where the vagaries of a defendant were due only to a wish held by many if not all criminal defendants who do not relish the prospects of standing trial but also, in the end, decide to take an unreasonably long-shot gamble on beating by standing trial a fair, reasonable and just guilty plea.

*United States v. DeFreitas*, 865 F.2d 80, 83 (4th Cir. 1989); *see also Brady*, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after

the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.").

"[T]he defendant bears the burden of demonstrating that withdrawal should be granted," *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir.), *cert. denied*, 128 S. Ct. 707 (2007); in this regard, the defendant bears a "heavy burden of persuasion in showing that . . . a fair and just reason exists," *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). "The decision to permit the defendant to withdraw a plea is discretionary, and our review is limited to the question of whether the district court abused its discretion." *United States v. Lambey*, 974 F.2d 1389, 1393 (4th Cir. 1992) (en banc). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007), *cert. denied*, 129 S. Ct. 41 (2008).

In light of the fact that "a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn," we have articulated a list of non-exclusive factors for a district court to consider in deciding a plea withdrawal motion. *Bowman*, 348 F.3d at 414. Those factors are: (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted legal innocence, (3) whether there has been a delay between entry of the plea and the filing of the motion, (4) whether the defendant has had close assistance of competent counsel, (5) whether withdrawal will prejudice the government, and (6) whether withdrawal will inconvenience the court and waste judicial resources. *Id.* The consideration of these factors is not "a rigidly mechanistic test, for the conspicuous fuzziness of [the] operative terms — 'fair and just' — precludes such an endeavor." *United States v. Sparks*, 67 F.3d 1145, 1154 (4th

Cir. 1995). However, a district court typically should balance these factors, along with any other pertinent information, to reach its decision. *See United States v. Faris*, 388 F.3d 452, 461 (4th Cir. 2004).

## II

Evidence in the record indicates that Thompson-Riviere was born in October 1965 in the Coco Solo Hospital in the Canal Zone.[1] His official birth certificate, which is marked as being certified by the Panama Canal Commission, lists his parents as Calvin Thompson and Elvira Riviere, Panamanian citizens who were married at the time of Thompson-Riviere's birth. Calvin Thompson and Elvira Riviere were married for 35 years and are now deceased.

During the 1980s, Thompson-Riviere entered the United States. In 1994, he was ordered deported to Panama, and he was removed from the United States to Panama in 1996. He reentered the United States on the day after he was removed. In 2006, the government indicted him under § 1326(b)(4) for illegal reentry into the United States. To convict him of this offense, the government bore the burden of proving beyond a reasonable doubt that (inter alia) he is an "alien," *United States v. Espinoza-Leon*, 873 F.2d 743, 746 (4th Cir. 1989), which means he is "not a citizen or national of the United States," 8 U.S.C. § 1101(a)(3). Having no suffi-

---

[1]"From 1904 to 1979, the United States exercised sovereignty over the Panama Canal and the surrounding 10-mile-wide Panama Canal Zone under the Isthmian Canal Convention, 33 Stat. 2234." *O'Connor v. United States*, 479 U.S. 27, 28 (1986). In October 1979, the Panama Canal Treaty "transferred to Panama sovereignty over the Canal and Zone, but gave the United States the right to operate the Canal until December 31, 1999." *Id.* "The vehicle for United States administration of the Canal [was] the Panama Canal Commission, a United States Government agency. . . ." *Id.* Coco Solo Naval Air Station was a United States military installation in the Canal Zone. *See Hollander v. McCain*, 566 F. Supp.2d 63, 65 (D.N.H. 2008).

cient reason to doubt that he was an alien, he pled guilty to the charged offense.

Thompson-Riviere has numerous siblings and maternal half-siblings, but he has always been closest with Barbara Hughes. Before his sentencing, Thompson-Riviere obtained DNA evidence showing a 99% probability that he shares the same father and mother with Barbara Hughes. Her official birth certificate, which is marked as being certified by the Panama Canal Commission, states that she was born in 1950 in the Naval Hospital at Coco Solo to Elvira Riviere and David Hughes, a United States citizen. She is the youngest of several children born to these parents. Until this DNA evidence was obtained, Barbara Hughes and Thompson-Riviere believed that they were only maternal half-siblings. Barbara Hughes is retired from the United States Air Force and appears to have resided in the United States since at least the early 1980s.

Armed with this DNA evidence, Thompson-Riviere moved to withdraw his guilty plea. Although he briefly addressed all of the pertinent plea withdrawal factors, the thrust of his motion is his assertion of legal innocence. Critical to his argument is 8 U.S.C. § 1403(a), which reads:

> Any person born in the Canal Zone on or after February 26, 1904, and whether before or after the effective date of this chapter, whose father or mother or both at the time of the birth of such person was or is a citizen of the United States, is declared to be a citizen of the United States.

Thompson-Riviere argued that the DNA evidence creates a real possibility that he is a United States citizen by virtue of § 1403(a) because his father very well may be David Hughes who, as noted, was a United States citizen. As Thompson-Riviere explained, if he is a United States citizen rather than an alien, then he necessarily would be innocent of the charged

offense. In making this argument, Thompson-Riviere asserted in his legal memorandum:

> When Mr. Thompson-Riviere was interviewed by Special Agent Robert G. Brown at the Lunenburg Correctional Center in November 2006, he told the Special Agent during the interview that his mother had told him that Calvin Thompson was not his real father, that he did not know who his father was, and that he had no further information at that time. Therefore, at the time of the plea, there was no firm evidence concerning derivative citizenship.

J.A. 63.

After the government filed a response to the motion, the district court conducted a telephone conference call with counsel and alerted them to *United States v. Connolly*, 2006 Westlaw 1084693 (E.D.N.Y. 2006) ("*Connolly I*"), which involved an interpretation of 8 U.S.C. § 1403(b). Similar to § 1403(a), § 1403(b) creates citizenship rights for certain children born "in the Republic of Panama . . . whose father or mother or both at the time of the birth of such person was or is a citizen of the United States employed by the Government of the United States. . . ."

In *Connolly I*, the defendant, who was born out of wedlock in the Republic of Panama, was charged with illegal reentry under § 1326; however, relying on § 1403(b), he argued that he was a United States citizen (rather than an alien) because his biological father was a United States citizen employed by the United States government at the time of the defendant's birth. The district court rejected the defendant's argument. Pertinent to the case before us, the court concluded that the term "father" in § 1403(b) refers only to a parent that has legitimated the parent-child relationship.[2] Without directly

---

[2]To reach this conclusion, the court purported to conduct a *Chevron* analysis. *See Chevron, U.S.A., Inc. v. N.R.D.C., Inc.*, 467 U.S. 837 (1984).

addressing whether § 1403(b) is ambiguous, the court adopted the government's interpretation of the statute. Because the defendant failed to prove that his biological father had legitimated him, the court held that he failed to establish entitlement to citizenship under § 1403(b).[3]

Several days after the conference call, the district court in the case before us held a hearing on Thompson-Riviere's plea withdrawal motion. At the outset of the hearing, the court referred to *Connolly I* and stated:

> [I]t seems to me the issue is very simple here. Was [Thompson-Riviere] ever legitimated or not? The law seems quite clear that he has to be legitimated in order to be considered to be a citizen. If you look at the reasoning of *Connolly* it seems to me to apply with equal force to [§ 1403(a)] . . . and it is, as I understand your evidence, he was never legitimated; is that correct?

J.A. 93. As Thompson-Riviere's counsel began to explain why she did not believe that *Connnolly I* controlled, the court reiterated its belief that whether Thompson-Riviere had been legitimated was the pertinent issue.

---

Under the *Chevron* analysis, courts must first consider whether "Congress has directly spoken to the precise question" at issue. *Id.* at 842. If Congress has so spoken, the inquiry is at an end, for courts, as well as any agency charged with enforcement of the statute, "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. However, if Congress has not directly addressed the precise question at issue, courts must determine whether the agency's interpretation of the statute in question is based on a permissible construction of the statute. *Id.*

[3]Alternatively, the district court held that the defendant failed to establish that his biological father was employed by the United States government at the time of the birth, a necessary fact under § 1403(b) but not § 1403(a).

After hearing argument from the parties, the district court identified the six plea withdrawal factors noted above and found that (1) Thompson-Riviere had not asserted that his plea was unknowing or involuntary, (2) the delay between the guilty plea and the motion is insignificant, (3) Thompson-Riviere had close assistance of counsel during his plea, (4) the government would not be prejudiced if the motion was granted, and (5) any inconvenience to the court caused by withdrawal of the plea does not militate against Thompson-Riviere. Thus, in the court's view, three of these five factors weigh in Thompson-Riviere's favor.

The district court then observed that the focus of the motion was really whether Thompson-Riviere had credibly asserted legal innocence, and that issue depended on his citizenship status under § 1403. The court noted that it was undisputed that Thompson-Riviere was born in the Canal Zone, and it seemed to accept the validity of the DNA evidence. However, the court then expressly followed *Connolly I* and concluded:

> [W]hat is of record here is that the defendant is not a legitimate child of David Hughes, the putative father. And I construe section 1403 the same way as the court did in construing section 1403(b) in *Connolly*. . . .
>
> The rule is that an illegitimate child does not acquire citizenship through a citizen father unless the child [is] legitimated. . . .
>
> So I think the basic principal of *Connolly* and interpretation is correct. There is no evidence, and the defendant concedes there is no evidence, of legitimization here, and therefore the defendant cannot prevail on factor number two . . . , whether the defendant has credibly asserted his legal innocence; therefore, the motion to withdraw his guilty plea is denied.

J.A. 106-07.

Subsequent to his sentencing, Thompson-Riviere appealed his conviction, arguing that the district court erred in denying his plea withdrawal motion. On the day before we heard oral argument, the Second Circuit issued an opinion addressing the appeal from *Connolly I. See United States v. Connolly*, 552 F.3d 86 (2nd Cir. 2008) ("*Connolly II*"). Although the court ultimately affirmed *Connolly I* because the defendant could not establish the necessary fact for purposes of § 1403(b) that his father was a United States employee at the time of the birth, it sharply criticized the *Connolly I* court's statutory analysis pertaining to the issue of legitimization.

In this regard, the Second Circuit framed the issue as being whether "the term 'father' as used in § 1403 refers simply to a male parent and therefore includes the biological father of a child born out of wedlock," and it noted that the government presented "a more narrow and complex definition" that excluded the father of a child born out of wedlock unless the child has been legitimated in accordance with the law of the father's domicile. 552 F.3d at 88-89. The court pointed out that the government's position was based on INS Interpretation Letter 303.1, 2001 Westlaw 1333855 (2001), a document that had "very little information about its genesis or identity" and, in any event, may not command *Chevron* deference because it merely appears to be an agency interpretation letter. 552 F.3d at 89 n.2.

The Second Circuit then addressed the *Connolly I* court's purported *Chevron* analysis and noted:

> In this case, it is unclear whether the District Court addressed the first step of the inquiry. Indeed, there appears to be little ambiguity in the language of § 1403. The statute uses the term "father" without modification, restriction or exception. INS Interpretation 303.1 itself observed that the precursor statute

to § 1403 "makes no distinction between persons born in or out of wedlock." Nor is such a distinction drawn anywhere in the legislative history.

552 F.3d at 89. The court further observed that "the ordinary meaning of 'father' is a male parent, and it is the duty of the court to enforce the plain statutory language." *Id.* at 90.

Additionally, the Second Circuit pointed out that "[w]here Congress has wished to distinguish fathers of children born out of wedlock in Title 8, it has not shied away from express language to that effect." *Id.* As the court explained:

> For purposes of subchapters I and II, of Chapter 12, Title 8, Congress has expressly excluded fathers of children born out of wedlock from the definition of "parent," "if the father has disappeared or abandoned or deserted the child or if the father has in writing irrevocably released the child for emigration and adoption." 8 U.S.C. § 1101(b)(2). However, with regard to subchapter III (which contains § 1403), Congress specifically established a much broader definition of "father." *See* 8 U.S.C. § 1101(c)(2) (providing that father as used in subchapter III includes the deceased father of a posthumous child). Even within subchapter III, where Congress has intended to modify the definition of "father" it has done so expressly, not by implication. *See* 8 U.S.C. § 1409(a) (imposing additional requirements for grant of citizenship to children born out of wedlock pursuant to select provisions of §§ 1401 and 1408). The government argues that the absence of language excluding fathers of children born out of wedlock must be read as a tacit endorsement of "the rule that an illegitimate child does not acquire citizenship through a citizen father unless the child is legitimated in accordance with the laws of the father's domicile." We are persuaded that the intricate legis-

lative scheme summarized above belies such an interpretation.

552 F.3d at 90.[4]

## III

As noted, we review the denial of a plea withdrawal motion for abuse of discretion. Apart from the issue of whether Thompson-Riviere credibly asserted legal innocence, the district court balanced the other plea withdrawal factors slightly in his favor. The government does not challenge the court's findings on any of those factors. However, the court denied the motion based on its conclusion that Thompson-Riviere failed to credibly assert legal innocence because he did not establish that he is the *legitimate* son of a United States citizen. Relying on *Connolly I*, the court deemed that fact essential for purposes of § 1403(a). On appeal, Thompson-Riviere challenges the court's interpretation of § 1403(a).

### A.

In making its ruling, the district court did not find that Thompson-Riviere's evidence lacks credibility or is otherwise objectionable. Moreover, for purposes of this appeal, the government "acknowledges that the DNA report seems to indicate that [Thompson-Riviere and Barbara Hughes] are brother and sister." *Brief of the United States*, at 8. Notwithstanding this acknowledgment, the government argues that the evidence is insufficient to establish that David Hughes is the biological father of Barbara Hughes and Thompson-Riviere. Pointing to the number of children Elvira Riviere had with Calvin Thompson and the timing of Barbara Hughes'

---

[4]The Second Circuit further concluded that even if the statutory language is ambiguous, "the interpretation advanced by the government would raise a number of difficulties" that it proceeded to address. 552 F.3d at 1290-91.

birth—she was born 15 years before Thompson-Riviere—the government "submits it is just as feasible that Mr. Thompson came upon the scene toward the end of Mrs. Hughes' marriage, and that the end result of that union may have been Barbara Hughes." *Id.* at 9. The government's suggested version of events is certainly plausible, but we find it not determinative at this stage of the case.[5]

Thompson-Riviere's evidence tends to prove that (1) he shares the same biological father and mother as Barbara Hughes and (2) her father is David Hughes, who was a United States citizen. These facts are taken from objective pieces of evidence (*i.e.*, the DNA report and an official birth certificate) that have thus far not been challenged. Additionally, the record indicates that Thompson-Riviere may have evidence that his mother told him that Calvin Thompson was not his father. Although Thompson-Riviere's evidence does not necessarily prove that David Hughes is his biological father, that is not his burden at this stage. *See United States v. Cline*, 286 Fed. Appx. 817, 821 (4th Cir. 2008) (noting that "[i]n attempting to withdraw from a guilty plea, a defendant is not required to provide conclusive proof of innocence").

Instead, Thompson-Riviere's burden is to credibly assert his legal innocence: that is, to present evidence that (1) has the "quality or power of inspiring belief," *United States v. Welsh*, 774 F.2d 670, 672 (4th Cir. 1985) (citation and quotation marks omitted), and (2) tends to "defeat the elements in the government's *prima facie* case" or to "make out a success-

---

[5]In any event, because the district court did not deny the motion on this basis, and we are reviewing the court's exercise of discretion, the propriety of our affirming on this ground is debatable. *See Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) ("Thus, with respect to a matter committed to the district court's discretion, we cannot invoke an alternative basis to affirm unless we can say as a matter of law that it would have been an abuse of discretion for the trial court to rule otherwise.") (citation and quotation marks omitted). Clearly, the district court would not have abused its discretion if it had granted the plea withdrawal motion.

ful affirmative defense," *Sparks*, 67 F.3d at 1151; *see also United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) ("[T]he defendant must present a credible claim of legal innocence. In other words, the defendant must make a factual argument that supports a legally cognizable defense." (citations omitted and emphasis in original)). Putting aside the issue of legitimacy for a moment, Thompson-Riviere clearly met this evidentiary burden. His evidence, if believed, tends to establish that he is the biological son of a United States citizen, David Hughes. If that fact is true, and if he is not required to prove that David Hughes legitimated him, then he is not an "alien." If he is not an alien, then he cannot be guilty of illegal reentry under § 1326.**[6]**

A case that is analogous in pertinent respects is *United States v. Gomez-Orozco*, 188 F.3d 422 (7th Cir. 1999). In that case, the defendant, who was born in Mexico, pled guilty to illegal reentry in violation of § 1326. Before his sentencing, the defendant discovered that he may be a United States citizen based on his parents' status. The statutes at issue in that case differ from the one before us, and it is unnecessary to detail the underlying facts supporting the defendant's claim of citizenship. It is sufficient to note that the district court denied the defendant's plea withdrawal motion, but the Seventh Circuit reversed, stating:

---

**[6]**In most cases, a defendant will not meet this standard by merely contradicting inculpatory statements made during the Rule 11 plea hearing or by arguing that facts that were known to him at the time of the plea negate his guilt. *See, e.g.*, *United States v. Ubakanma*, 215 F.3d 421, 424-25 (4th Cir. 2000); *United States v. Haley*, 784 F.2d 1218, 1219 (4th Cir. 1986). Indeed, "a defendant must give sufficient reasons to explain why contradictory positions were taken before the district court. . . ." *United States v. Brown*, 250 F.3d 811, 818 (3rd Cir. 2001) (citation and quotation marks omitted). Here, Thompson-Riviere has not simply changed his story. Instead, he did not obtain the DNA evidence until after he pled guilty, and there is no indication in the record that he knew before his plea that David Hughes might be his father.

Gomez-Orozco has presented substantial evidence that his parents were married under common law at the time he was born. While this evidence is disputed, the fact remains that he has provided a fair and just reason to withdraw his plea of guilty so that he may determine the status of his citizenship.

. . .

We are not now deciding the issue of Gomez-Orozco's citizenship. We simply state that he has presented enough evidence to show a fair and just reason why he is permitted to withdraw his guilty plea. The government must now be put to its burden of proving every element of 8 U.S.C. § 1326(a) beyond a reasonable doubt, including the element that Gomez-Orozco is, indeed, an alien. Since Gomez-Orozco has shown that he may be an American citizen . . . , it is possible that a jury may find a reasonable doubt about his alienage, and therefore, that he cannot be convicted of the offense.

188 F.3d at 427.

## B.

Having found that Thompson-Riviere has made a credible factual assertion that David Hughes is his biological father, a factor that supports his claim of legal innocence, we now turn to the legal issue upon which the district court based its denial of the plea withdrawal motion: whether he is required to establish that David Hughes legitimated him. Although our review of the overall decision to deny the plea withdrawal motion is for abuse of discretion, we review this question of statutory interpretation de novo. *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 286 (4th Cir. 2004). We hold that the

district court misinterpreted § 1403(a) by requiring proof of legitimization.**⁷**

Using common sense as a guide, *Kofa v. I.N.S.*, 60 F.3d 1084, 1088 (4th Cir. 1995) (en banc), "[o]ur first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). We determine the "plainness or ambiguity of statutory language . . . by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* at 340 (internal quotation marks omitted).**⁸**

Section 1403(a) provides in pertinent part that "[a]ny person born in the Canal Zone . . . whose father or mother or both at the time of the birth of such person was or is a citizen of the United States, is declared to be a citizen of the United States." Under the district court's reading, the term "father" as used in this statute is ambiguous. Based on that purported ambiguity, the court adopted the government's "more narrow and complex definition," *Connolly II*, 552 F.3d at 88, holding

---

**⁷**In the unique posture of this appeal, the answer to this legal question is dispositive of both whether Thompson-Riviere has credibly asserted legal innocence and whether he should be allowed to withdraw his plea. However, we emphasize that even though the legal innocence factor is dispositive in *this* appeal, it is nonetheless simply one factor that must be considered in combination with the other plea withdrawal factors.

**⁸***See also Three Lower Counties Comm. Health Servs., Inc. v. Maryland*, 498 F.3d 294, 301 (4th Cir. 2007) ("We begin with the text, for the Supreme Court has stated time and again, notwithstanding the administrative complexities of implementing a federal program, courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the statutory language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." (citations and quotation marks omitted)).

that in the context of an out-of-wedlock birth the term is lim-ited to men who have legitimated the child. Like the Second Circuit, we find that interpretation untenable in light of the plain language of § 1403(a). *See also McConney v. Rogers*, 287 F.2d 473, 476 (9th Cir. 1961) (noting that under § 1403 the defendant who was born in either Panama or the Canal Zone could potentially qualify for citizenship "if one of his *natural* parents was an American citizen." (emphasis added)).

In *United States v. Sheek*, 990 F.2d 150 (4th Cir. 1993), we considered the meaning of the term "parent" in 18 U.S.C. § 1201(a) (the Federal Kidnapping Act) to determine whether the statute's parental exemption from criminal liability applied to a biological mother whose parental rights had been legally terminated. The district court had dismissed the indict-ment, holding that the plain meaning of the term "parent" encompassed a "biological parent," and therefore the biologi-cal mother who had abducted her own children was not crimi-nally liable despite the termination of her parental rights. In affirming that ruling, we noted that the government contended that the statutory term was ambiguous and that the govern-ment argued for a more restrictive definition. However, we rejected this argument, holding instead that the term was unambiguous. Among other reasons, we explained:

> Notwithstanding the government's reference to Black's Law Dictionary for the proposition that the word "parent" is susceptible of some expansive vari-ation in its exact definition, this Court finds no basis for contracting the definition to exclude one who begets the child. A state court, pursuant to its author-ity to oversee domestic relations matters, may termi-nate parental rights but it may not alter the identity of a biological parent.

*Id.* at 153.[9]

---

[9]Subsequent to our decision, Congress added subsection (h) to § 1201 to specify: "As used in this section, the term 'parent' does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court order."

*Sheek* is instructive here. Like "parent," the term "father" has different meanings depending on the manner in which it is modified. *See generally Black's Law Dictionary*, at 640-41 (8th ed. 2004) (defining "father" in a variety of ways depending on modifying language). However, nothing in § 1403(a) modifies the term. Rather, § 1403(a) plainly states that the right to citizenship arises if, among other things, the "father" is a United States citizen at the time of the birth. We agree with the Second Circuit that "the ordinary meaning of 'father' is a male parent," *Connolly II*, 552 F.3d at 90, and as we made clear in *Sheek*, the term "parent" ordinarily designates the biological parent. Accordingly, we find that the term "father" in § 1403(a) unambiguously includes the biological father. *See generally Gonzales v. Carhart*, 127 S. Ct. 1610, 1630 (2007) ("In interpreting statutory texts courts use the ordinary meaning of terms unless context requires a different result.").

Our interpretation is bolstered by the fact that in other derivative-citizenship statutes that (like § 1403(a)) are part of the Immigration and Nationality Act of 1952, Congress expressly mandated legitimacy requirements for children born out-of-wedlock. Specifically, in 8 U.S.C. § 1409(a), Congress legislated that certain derivative-citizenship provisions codified in 8 U.S.C. §§ 1401 and 1408 apply "to a person born out of wedlock" only if:

> (1) a blood relationship between the person and the father is established by clear and convincing evidence,
>
> (2) the father had the nationality of the United States at the time of the person's birth,
>
> (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and
>
> (4) while the person is under the age of 18 years—

(A) the person is legitimated under the law of the person's residence or domicile,

(B) the father acknowledges paternity of the person in writing under oath, or

(C) the paternity of the person is established by adjudication of a competent court.

Because Congress has not mandated such requirements for § 1403(a), we may presume that Congress intended to draw a distinction between the "fathers" within the scope of § 1409(a) and § 1403(a). *See Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2129-30 (2008) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and quotation marks omitted)); *Connolly II*, 552 F.3d at 90 ("Where Congress has wished to distinguish fathers of children born out of wedlock in Title 8, it has not shied away from express language to that effect.").

In light of our conclusion that the term "father" in § 1403(a) is unambiguous, our inquiry into its meaning has come to an end. This is so even in spite of the fact that the government argues that our opinion is contrary to agency interpretation. *See, e.g.*, *Brown v. Gardner*, 513 U.S. 115, 122 (1994) ("A regulation's age is no antidote to clear inconsistency with a statute, and the fact . . . that [a regulation] flies against the plain language of the statutory text exempts courts from any obligation to defer to it.").

IV

Thompson-Riviere has made a credible assertion of legal innocence by presenting objective evidence that may prove he is a United States citizen under § 1403(a). Because the district

court balanced the other plea withdrawal factors in Thompson-Riviere's favor and specifically denied the plea withdrawal motion based on its contrary conclusion regarding legal innocence, we hold that the district court abused its discretion. Therefore, we vacate the judgment and remand with instructions for the district court to permit Thompson-Riviere to withdraw his guilty plea.

*VACATED AND REMANDED*