UNITED STATES of America,
Plaintiff–Appellee,

v.

Francis Curtis DAVIS, a/k/a Abdul–Malik Lbnfrancis As–Salafi,
Defendant–Appellant.

No. 12–4542.

United States Court of Appeals,
Fourth Circuit.

Argued: May 17, 2013.

Decided: June 20, 2013.

**ARGUED:** Keith Nelson Hurley, Keith N. Hurley, P.C., Richmond, Virginia, for Appellant. Angela Mastandrea–Miller, Office Of The United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

Before WILKINSON, DUNCAN, and WYNN, Circuit Judges.

Affirmed by unpublished opinion. Judge WYNN wrote the opinion, in which Judge WILKINSON and Judge DUNCAN joined.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Eight weeks after pleading guilty in district court, Defendant–Appellant Francis C. Davis moved to withdraw his plea. The district court denied Davis's motion and sentenced him to the plea-recommended twenty-year prison term.

On appeal, Davis argues that the district court judge erred in not recusing himself from hearing Davis's motion to withdraw his plea. Davis also argues that the district court impermissibly participated in the plea negotiations and therefore abused its discretion in denying Davis's motion. For the reasons discussed below, we affirm the rulings of the district court.

I.

In March 2011, Davis was indicted for robbery affecting commerce, using a firearm in a crime of violence, and possession

of a firearm by a convicted felon.[1] Davis pled not guilty to all of the charges, and the case was set for trial. Before trial, Davis's counsel filed a motion to suppress statements Davis made to law enforcement, and, relevant to this appeal, Davis filed a pro se motion to appoint new counsel.

At a hearing in December 2011, the district court granted the motion to suppress and discussed the pro se motion with Davis. After that discussion, Davis indicated that he would proceed with current counsel. The court then advised Davis that he could face a mandatory minimum term of fifty years' imprisonment. At the end of the hearing, the court told Davis "you have got a difficult situation if you get convicted" and that everyone in the courtroom "would hate to see your life ruined in that way." J.A. 48.

In January 2012, Davis's counsel and the government reached a plea agreement whereby the government agreed to recommend a twenty-year prison sentence.[2] Davis initially accepted but on the morning of the plea hearing, Davis proposed a modification that the government rejected. At the hearing, the court discussed with Davis the options of pleading versus going to trial:

> If you are found guilty of both of these offenses, you are going to go to jail, at a minimum, for 50 years. And that is— they are offering you a way to get out of that through whatever sort of a plea bargain they offered you. It looks like they have a lot of witnesses. But, you know, you and [your attorney] need to make that choice. But—I probably

have a reputation as a light sentencer— but I will tell you, there is nothing I can do about those, about that 50–year sentence. I cannot give you anything less than that if you are convicted of both those offenses.

J.A. 57–58.

The court also said to Davis:

> [N]ow is the time for you to make a decision whether you want to take the 20 year sentence or face the possibility of 50 years on the gun charges alone, plus more time, if any, on the robbery charge.... I urge you to think carefully before you turn down that offer.... [Y]ou and [your attorney] know more about this case than I do. And maybe they really don't have good witnesses. But I sort of doubt that. So, you know, you have got some exposure here. What you do about that exposure is entirely up to you.

J.A. 59. The court suggested that with a 50–year sentence, Davis, who was 35 years old at the time, "would die in jail probably." J.A. 61. Then the court adjourned for approximately an hour to allow Davis to consult with his counsel. Upon return, Davis indicated that he would plead guilty. And, after determining Davis was pleading knowingly and voluntarily, the court accepted Davis's plea and scheduled sentencing.

Almost two months later, Davis filed a pro se motion to withdraw his guilty plea, alleging ineffective assistance of counsel and stating that the court's advice that he "think about" his decision persuaded him to accept the plea. J.A. 104. Davis also filed a pro se motion to have new counsel

---

1. Davis has legally changed his name. But because his name was Davis at the time of most events underlying this appeal, we refer to him here as Davis.

2. The government stated at oral argument that it had offered the plea agreement based on its belief that a key witness would be unavailable for trial. The government later learned that the witness would be available but chose to honor its offer.

appointed. The district court granted Davis's motion for new counsel and scheduled a hearing on Davis's motion to withdraw his plea. After the hearing, the district court denied Davis's motion to withdraw his plea. Thereafter, Davis, pro se, moved to dismiss the indictment and hold an evidentiary hearing on the voluntariness of his plea. The district court denied both motions and sentenced Davis to the plea-recommended term of twenty years' imprisonment.

On appeal, Davis argues that the district court judge was required to recuse himself from hearing Davis's motion to withdraw his plea and abused his discretion in denying that motion. We address each argument in turn.

## II.

■■■ Davis first argues that the district court judge was required to recuse himself from reviewing Davis's motion to withdraw his guilty plea. Both parties agree that Davis raises this issue for the first time on appeal. We therefore review it only for plain error, Fed.R.Crim.P. 52(b), meaning Davis must show that: (1) an error occurred; (2) it was plain; and (3) it affected his substantial rights. *United States v. Penniegraft,* 641 F.3d 566, 575 (4th Cir.2011). This Court exercises its discretion to correct such an error only when "failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Davis contends that recusal was mandatory under 28 U.S.C. § 455(b)(1), which provides that a judge shall disqualify himself "[w]here he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Further,

Davis argues that Section 455(a) also required recusal because one might reasonably question the partiality of a judge reviewing himself. *See id.* § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").

The bar for recusal is quite high— "courts have only granted recusal motions in cases involving particularly egregious conduct." *Belue v. Leventhal,* 640 F.3d 567, 573 (4th Cir.2011). Moreover, "both § 455(a) and § 455(b)(1) carry an extrajudicial source limitation" meaning that generally a judge's bias or prejudice must "result in an opinion on the merits [of a case] on some basis other than what the judge learned from his participation in the case." *Id.* at 572–73 (internal quotation marks and citations omitted).

Here, Davis fails to identify any "personal knowledge" of the district court judge that came from an extrajudicial source: The judge's knowledge of the case stems solely from his having presided over it. And it was the district court's judicial duty to ensure that Davis's plea was knowing and voluntary. Further, Davis fails to show, and our review of the record reveals no indication of, bias against Davis or favoritism toward the government. The district court judge carefully considered Davis's motion to withdraw under the appropriate legal framework after having granted Davis new counsel to represent him in that motion hearing.

In sum, Davis has failed to show that the district court plainly erred by violating Section 455.

## III.

■■■ Davis also argues that the district court erred in denying his motion to withdraw his plea. We review this issue for

abuse of discretion. *See, e.g., United States v. Ubakanma,* 215 F.3d 421, 424 (4th Cir.2000) ("We review the denial of a motion to withdraw a guilty plea for abuse of discretion.").

A defendant has no absolute right to withdraw a guilty plea. Rather, he must show that a "fair and just reason" supports withdrawal. *United States v. Moore,* 931 F.2d 245, 248 (4th Cir.1991) (citing Fed. R.Crim.P. 32(d)). In *Moore,* this Court delineated six factors district courts should consider to determine whether a defendant has met this burden:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Id.*

Here, the district court applied the *Moore* factors, concluded that the three most important factors-voluntariness, innocence, and close assistance of counsel-cut against Davis, and thus denied Davis's motion. *See United States v. Sparks,* 67 F.3d 1145, 1154 (4th Cir.1995) ("The factors that speak most straightforwardly to the question whether the movant has a fair and just reason to upset settled systemic expectations by withdrawing her plea are the first, second, and fourth.").

The bulk of Davis's appeal is devoted to the first *Moore* factor, voluntariness. Specifically, Davis contends that the district court's dialogue with him at both the December 2011 and January 2012 hearings amounted to improper judicial participation in plea negotiations in violation of Federal Rule of Criminal Procedure 11(c) and coerced him into accepting the plea. Upon close review of the record, we conclude that although the district court judge may have been overly cautious in his efforts to ensure Davis made a fully informed decision, those efforts did not amount to coercion.

Federal Rule of Criminal Procedure 11(c) commands that courts "must not participate" in plea discussions. This "prohibition on judicial involvement in plea negotiations guards against the high and unacceptable risk of coercing a defendant to enter into an involuntary guilty plea." *United States v. Bradley,* 455 F.3d 453, 460 (4th Cir.2006) (internal quotation marks omitted). A court, however, must ensure that a plea is knowing and voluntary before it accepts the plea. *E.g., United States v. Bowman,* 348 F.3d 408, 414 (4th Cir.2003). And Rule 11, which sets out the information a court must convey to a defendant to ensure that he understands his plea, specifically requires a court to "inform the defendant of, and determine that the defendant understands ... any mandatory minimum penalty. ...." Fed.R.Crim.P. 11(b)(1)(I).

Here, the district court engaged Davis to ensure that he understood the consequences of pleading versus going to trial in the context of the potential penalties Davis faced.[3] The court made clear that the

---

3. The Supreme Court recently underscored that the plea-colloquy requirements "come into play after a defendant has agreed to plead guilty" and the bar on judicial participation "becomes operative before a defendant has decided whether to plead guilty." *United States v. Davila,* —— U.S. ——, 133 S.Ct. 2139, 2148, 186 L.Ed.2d 139 (2013). In *Davila,* the government acknowledged that a Rule 11(c) violation had occurred. Here, we

choice was Davis's. And after Davis accepted the plea agreement, the district court engaged in a thorough Rule 11 colloquy, inquiring about whether anyone had threatened Davis to get him to plead guilty, whether he was pleading of his own free will, and whether he believed pleading was in his best interest. *See Bowman*, 348 F.3d at 417 ("The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted."); *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir.1995) ("[A]n appropriately conducted Rule 11 proceeding ... raise[s] a strong presumption that the plea is final and binding.") (internal quotation marks omitted). Accordingly, the district court did not err in ruling that Davis failed to show that his plea was not knowing or voluntary.

■ The district court's analysis of the five other *Moore* factors requires less comment. Regarding the second factor—innocence—the district court concluded that, based on the Statement of Facts, Davis failed to make a credible assertion of innocence. The district court noted that Davis "ha[d] not made much of a showing that he was innocent," J.A. 187, and Davis declared under oath that he understood the charges and was pleading guilty because he was, in fact, guilty. *See Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir.2001) (holding that, absent "clear and convincing evidence to the contrary," defendant is "bound by his representations" made during the plea colloquy). Thus, the second *Moore* factor does not weigh in Davis's favor.

■ On the third factor, timing, Davis filed his motion almost two months after

pleading guilty. A district court could count a delay of this length against a defendant. *See Moore*, 931 F.2d at 248 ("Moore long delayed between the time of the pleas and the time of entering the motion. . . . He waited six weeks before giving notice of his intent to move to withdraw his pleas."). Nonetheless, the district court here did not, noting the limitations imposed on Davis by his imprisonment. Regardless, the timing factor does not itself constitute a fair and just reason for withdrawal.

■ Davis's argument regarding the fourth *Moore* factor, close assistance of counsel, is similarly unpersuasive. A defendant can establish this factor only by showing that "counsel's performance fell below an objective standard of reasonableness." *Sparks*, 67 F.3d at 1153 (internal quotation marks omitted). We agree with the district court that there is no record evidence that Davis's attorney performed below an objective standard of reasonableness. Although—as the district court noted—Davis complained about his attorney, he declared under oath that he was satisfied with his counsel, who had, in fact, won a pretrial motion to suppress prosecutorial evidence early in the case. Thus, this factor also weighs against Davis.

■ Finally, regarding the last two *Moore* factors, the district court acknowledged that the government intended to call nearly one dozen witnesses-many of whom reside out of state. Nonetheless, the court concluded that prejudice to the government and inconvenience to the judiciary were not "dispositive" in denying Davis's motion. J.A. 189. Further, when a district court determines that "the first four factors ... militate against granting the

---

decline to find that the district court's comments constituted participation in the plea

negotiations. *See id.* at 2148–49.

defendant's motion, it can reasonably refrain from trying to ascertain just how much withdrawal of the plea would prejudice the government and inconvenience the court." *Sparks,* 67 F.3d at 1154. Clearly, then, Davis fails to mount an abuse of discretion argument based on these factors.

### IV.

Concluding that the district court judge neither erred in not recusing himself nor abused his discretion in denying Davis's motion to withdraw his plea, we affirm.

*AFFIRMED.*